**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **JUSTIN PORTER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **15-cv-0523** |
| | ) | |
| **v.** | ) | **Judge John Z. Lee** |
| | ) | |
| **JOHN COMBS, TEAM ONE LACROSSE, LLC, and SMP TEAM ONE, LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Justin Porter ("Porter") designed a sports logo for a lacrosse club, Team One, with the understanding that he would be compensated by the club at a future date. Since that time, the club has used the logo on team merchandise, but Porter claims that he never received payment for creating the team logo and brings copyright infringement claims against Defendants John Combs ("Combs"), Team One LaCrosse, LLC ("Team One"),[1] and SMP Team One, LLC ("SMP Team One") (collectively, "Defendants").

Defendants move to dismiss under Rule 12(b)(6) based on the three-year statute of limitations for civil actions under the Copyright Act, 17 U.S.C. § 507(b).[2] In short, Defendants argue that, although Porter has filed claims for copyright infringement, in actuality, he is

[1] Defendants argue that Team One LaCrosse, LLC is misidentified and the correct party name is Combs Lax, LLC. *See* Defs.' Mot. Dismiss 1. The docket does not contain a substitution of parties. Because this issue is not material to this decision, the Court will reference Team One LaCrosse, LLC, throughout.

[2] Defendants have filed two motions to dismiss. Defendants John Combs and Team One LaCrosse, LLC move to dismiss and advance a statute of limitations argument, an argument for failure to state a claim as to Count V, and a motion for attorney's fees. Defendant Team One Lacrosse, LLC filed a separate motion to dismiss, adopting the arguments in the earlier-filed motion to dismiss in full, with the exception of the motion to dismiss Count V for failure to state a claim. For clarity, this Court's citations to Defendants' motion to dismiss will refer to the earlier-filed motion to dismiss, which contains all of the Defendants' substantive arguments.

asserting a claim of copyright ownership. From this premise, Defendants argue Porter's claims are barred by the three-year statute of limitations. Defendants also argue that Porter fails to state a claim for vicarious infringement in Count V because he fails to identify the manner of vicarious infringement and the financial gain to Defendants from their alleged actions. Lastly, Defendants move for their attorney's fees. For the reasons stated herein, Defendants' motions are denied.

## I. Factual Background[3]

In April 2010, Porter and Combs entered in an oral contract whereby Porter agreed to coach several youth lacrosse teams for Combs' lacrosse club, Team One. *See* Am. Compl. ¶¶ 12–13. At the end of July 2010, Porter took a two-week break from coaching. *See id.* ¶ 16. Combs promised Porter that when he returned from his two-week break, Combs would hire Porter under a full-time employment contract, similar to the terms of employment of the two salaried coaches who worked for Team One. *See id.* ¶ 17. However, at the time, Combs did not have enough money to pay Porter a full-time employment contract rate because of a business dispute. *See id.* ¶ 18. Because of this, Combs promised to pay Porter $500.00 on a biweekly basis starting in August 2010, until Combs and Team One were financially able to offer him a full-time employment contract. *See id.* ¶ 19.

In September 2010, a coach for Team One suggested that Combs employ Porter's design skills to design a team logo. *See id.* ¶ 20. Combs suggested to Porter that if he could design a logo that the team could use, he would be compensated independently of Porter's coaching contract. *See id.* ¶ 21. On October 24, 2010, Porter completed several logo sketches and showed them to Combs. *See id.* ¶ 22. Out of these sketches, Combs chose the logo design consisting of

---

[3]  When reviewing a defendant's motion to dismiss, the Court assumes the alleged facts in the complaint are true and draws all possible inferences in a plaintiff's favor. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

a block letter "T" with Native American style bird feathers containing four to six point stars (hereinafter, "logo design"). *See id.* ¶ 23.

After choosing this design, Combs told Porter that he would be paid for his logo design once Team One secured the funds to do so. Porter, in turn, agreed to allow Combs and Team One to use the logo design for team lacrosse equipment and memorabilia under the condition that he would be compensated for his work. *See id.* ¶ 24.

In January 2011, Combs changed Porter's terms of employment from the biweekly arrangement to an annual salary of $25,000.00. *See id.* ¶ 25. But this salaried rate contained no consideration for the logo design. *See id.* ¶ 26. Porter inquired about payment for the logo design, but was told that Team One had not secured money for the logo yet. *See id.* ¶ 27.

Later that year, in September 2011, Porter became aware of a possible merger between Team One and Sports Made Personal, another athletic club. *See id.* ¶ 28. That same month, Combs provided Porter with a new compensation package, consisting of an annual salary of $27,000 and an additional $4,200 for insurance coverage. *See id.* ¶ 29. Porter again inquired as to the status of compensation for his logo design; this time, Combs assured Porter that the upcoming merger with Sports Made would put him in the position to pay Porter. *See id.* ¶ 30.

In December 2011, Team One and Sports Made Personal completed a merger to form a new entity, Defendant SMP Team One, LLC ("SMP Team One"). *See id.* ¶ 31. On December 7, 2011, Stacy Shane, the CEO of the new entity, sent a letter to Porter laying out the terms of his employment with the new company. *See id.* ¶ 32. The letter indicated Porter was being hired as director of programs. *See id.* ¶ 33. Shane then sent Porter another email on December 15, 2011, further explaining that Porter's new position consisted of working with high-end players as a coach and trainer and doing at least ten appearances for marketing and "shooting/coaching"

demonstrations. *See id.* ¶¶ 34–35. Porter was not asked to sign a new contract to obtain his position with the new company. *See id.* ¶ 36.

Porter alleges upon information and belief that, as part of the merger, SMP Team One purchased all of the intellectual property belonging to Team One. *See id.* ¶ 37. Consequently, on January 10, 2012, Porter sent an email to SMP Team One revoking the license to use the Team One logo. *See id.* ¶ 38. Following this email, Combs informed Porter that communications about the logo design should be addressed to him and not SMP Team One. *See id.* ¶ 39. In any event, Porter believes that SMP Team One now owns whatever intellectual property rights Combs and Team One had prior to the merger. *See id.*

In June 2014, Porter was informed by SMP Team One that he should expect a raise for exceptional performance. *See id.* ¶¶ 41, 43. At that meeting, Porter again inquired when he would be paid for designing the logo, which now was being used by the merged entity. His inquiries, however, were "put off" until a "later date." *See id.* ¶ 43. Furthermore, in what Porter believes was an attempt to dissuade him from pursuing the logo compensation issue any further, Defendants promised to move him up to an executive position. *See id.* ¶ 44.

Later, in October 2014, Defendants reversed course, now intimating that they would demote Porter to an hourly position without benefits. *See id.* ¶ 45. On November 6, 2014, Porter again met with SMP Team One's management to discuss demotion and use of the logo. *See id.* ¶ 46. In this meeting, Porter indicated that he did not want Defendants to use his logo design anymore. *See id.* ¶ 47.

Porter alleges that he owns all the rights, titles, and interests in the logo design, including a United States Copyright Certificate of Registration for the logo design. *See id.* ¶ 48. He also

asserts that Defendants have continued to use Porter's logo design since 2014 and have even created a purple version of the logo design for their female apparel line. *See id.* ¶¶ 49–50.

## II. Legal Standards

To survive a motion to dismiss pursuant to Rule 12(b)(6), the complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in the complaint must at least "raise a right to relief above the speculative level." *Bell Atl. Corp.*, 550 U.S. at 555. The Court must accept as true all well-pleaded allegations in the complaint and draw all possible inferences in the plaintiff's favor. *See Tamayo*, 526 F.3d at 1081. Mere legal conclusions, however, "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

## III. Analysis

### A. Statute of Limitations

Defendants move to dismiss based on the three-year statute of limitations for civil actions under the Copyright Act. *See* 17 U.S.C. § 507(b) ("No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued."). The statute of limitations is an affirmative defense, and dismissing complaints on the grounds of the statute of limitations is typically improper. *See Reiser v. Residential Funding Corp.,* 380 F.3d 1027, 1030 (7th Cir. 2004). "[W]here a defendant raises the statute of limitations as an affirmative defense at the motion to dismiss stage, a court can only dismiss a claim 'when [the] complaint plainly reveals that an action is untimely under the governing statute of limitations.'" *Jovic v. L-3 Servs., Inc.*, --- F. Supp. 3d ----, No. 10 C 5197, 2014 WL 4748614, at *11 (N.D. Ill. Sept. 24, 2014) (quoting *Andonissamy v. Hewlett–Packard Co.*, 547 F.3d 841, 847 (7th Cir. 2008)). This is because a plaintiff "need not anticipate and attempt to plead around all potential

defenses . . . . Complaints need not contain any information about defenses and may not be dismissed for that omission." *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004). "In other words, the plaintiff must affirmatively plead himself out of court." *Chic. Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 614 (7th Cir. 2014) (reviewing statute of limitations dismissal under 17 U.S.C. § 507(b)).

As the Seventh Circuit has noted, the Supreme Court recently clarified that 17 U.S.C. § 507(b) outlines a "separate accrual" rule for copyright claims:

> [W]hen a defendant commits successive violations, the statute of limitations runs separately from each violation. Each time an infringing work is reproduced or distributed, the infringer commits a new wrong. Each wrong gives rise to a discrete "claim" that "accrue[s]" at the time the wrong occurs. In short, each infringing act starts a new limitations period.

*Chic. Bldg. Design, P.C.*, 770 F.3d at 614 (quoting *Petrella v. Metro–Goldwyn–Mayer, Inc.*, ––– U.S. –––, 134 S. Ct. 1962, 1969 (2014)). Here, Porter alleges that Defendants have committed acts of infringement in 2014 and 2015, and continue to do so. *See* Am. Compl. ¶¶ 11, 50. These acts fall within the limitations period and allow Porter to maintain his lawsuit.

But Defendants press another argument here. They contend that Porter's claims are in actuality claims disputing the ownership of the logo design copyright. Defendants continue that, where a dispute over copyright ownership masquerades as an infringement claim, the limitations period does not follow the "separate accrual" rule, but instead runs from the date that Porter knew of the contested ownership. According to Defendants' theory, because Porter was aware that Defendants were contesting his ownership of the copyright as early as January 2012, just after the merger took place, his claims are barred by the three-year limitations period. *See Consumer Health Info. Corp. v. Amylin Pharm., Inc.*, No. 1:13-CV-01061-TWP, 2014 WL 4670881, at **4–8 (S.D. Ind. Sept. 18, 2014); *see also Big E. Entm't, Inc. v. Zomba Enterprs.*,

*Inc.*, 453 F. Supp. 2d 788, 795 (S.D.N.Y. 2006), *aff'd sub nom. Big E. Entm't, Inc. v. Zomba Enterprs., Inc.*, 259 F. App'x 413 (2d Cir. 2008).

In advancing their arguments, Defendants point to Paragraph 37 of the amended complaint, which alleges that Team One had arranged for SMP to purchase "all intellectual property belonging to Team One." Defs.' Mem. at 5. According to Defendants, this transaction constituted a "repudiation" of Porter's ownership rights in the team logo. *Id.* at 7. Defendants also highlight Paragraph 57 of the amended complaint, which alleges that "Combs and/or Team One failed to compensate Porter for the creation and use of the logo, and sold the logo *as if he was in fact the owner* of the copyright to the logo." *See* Am. Compl. ¶ 57 (emphasis added). Although such arguments may have superficial appeal, when the amended complaint is viewed in its entirety, Defendants' interpretation of Porter's claims is strained at best.

Although Defendants try mightily to portray this as a dispute over ownership, the allegations in the amended complaint must be construed in Porter's favor, and when viewed in that light, they claim unauthorized copyright *use*, not ownership. *See, e.g.*, Am. Compl. ¶¶ 24 ("Porter agreed to *allow use* of the logo by Combs for Team One") (emphasis added); 38 ("Porter revoked the existing license *for use* of the logo"). Defendants correctly point out that Porter alleges that the new entity purchased the "intellectual property" of Team One. But this reasonably could be read to mean that Team One transferred its license to use the team logo (a license that it received from Porter) to the merged entity. Similarly, the allegation that Team One was treating the team logo as if it were its own reasonably could be read to mean that Team One was claiming to SMP that it owned the rights to the logo (whether the licensing rights or ownership rights), even though it realized and made clear to Porter that it did not do so. In any event, such allegations in and of themselves do not convert Porter's infringement claims to a

dispute in ownership. Indeed, Porter's actions subsequent to the merger reinforce this reading. In November 2014, Porter attempted to revoke the merged entity's right to *use* the logo design, not to claim ownership over it. *See* Am. Compl. ¶ 38. And as Porter points out, if Porter granted Defendants a nonexclusive license (as he claims), ownership was not in dispute at that time. *See ITOFCA, Inc. v. MegaTrans Logistics, Inc.*, 322 F.3d 928, 940 (7th Cir. 2003) ("A nonexclusive license does not transfer ownership of the copyright to the licensee. The copyright owner simply permits the use of a copyrighted work in a particular manner.") (internal quotations omitted).

Of course, Defendants may argue during the course of this action that they, and not Porter, are the rightful owners of the copyright. But, such facts are not affirmatively alleged in the amended complaint and do not warrant dismissal at the Rule 12(b)(6) stage. "Only when the plaintiff pleads itself out of court—that is, admits all the ingredients of an impenetrable defense—may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6)." *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004).

To this end, the two principle cases relied upon by Defendants are factually and procedurally distinguishable. In *Consumer Health Info. Corp.*, the court's holding rested on the fact that an express contract between the parties assigned all ownership rights and all other rights incident to copyright ownership to the defendant. 2014 WL 4670881, at *6 (examining the Master Services Agreement between the parties that was attached to the motion to dismiss).[4] The court reasoned that the plaintiff "was on notice back in 2006 that [defendant] claimed an ownership interest in the copyrighted materials by the terms of the [contract], and any challenge to their ownership was required to be brought within three years of the date of the [contract]." *Id.* No such allegations are present here. As for *Sanchez v. Hacienda Records & Recording*

4 *Consumer Health* is currently pending before the Seventh Circuit.

*Studio, Inc.*, the court in that case was considering a motion for summary judgment, not a motion to dismiss. 42 F.Supp.3d 845, 853 (S.D. Tex. 2014).[5]

Even assuming, *arguendo*, that Defendants are correct, and Porter's copyright claims sound in ownership, rather than infringement, the doctrine of equitable estoppel is fatal to Defendants' statute of limitations argument. In the context of a copyright ownership claim, the Seventh Circuit has noted "statements and actions by [defendants] that seem positively to acknowledge [plaintiff's] copyrights" constitute the "sort of 'lulling' comments" that suggest a basis for rejecting a motion to dismiss based on the statute of limitations" based upon equitable estoppel. *Gaiman*, 360 F.3d at 656. *See also Taylor v. Meirick*, 712 F.2d 1112, 1118 (7th Cir. 1983) (stating "there is no doubt that the copyright statute of limitations is tolled by fraudulent concealment of the infringement"). Here, Porter alleges that Defendants consistently responded to his requests regarding payment for the logo design in a manner that would constitute the type of "lulling" raised in *Gaiman*. In particular, from February 2013 to June 2014, Porter made various attempts to resolve the logo compensation issue. *See* Am. Compl. ¶¶ 40–42. In a June 2014 meeting with Defendants, Porter raised the issue of logo compensation, but Defendants put that discussion off until a later date. *See* Am. Compl. ¶ 44. At a meeting on November 6, 2014, Porter again raised the issue of use of the logo and compensation for its use. *See* Am. Compl. ¶

5 A court in this district addresses a similar argument in *Warrick v. Roberts*, 34 F. Supp. 3d 913 (N.D. Ill. 2014), but it too is distinguishable on its facts. In *Warrick*, the Court noted that "the central issue is not one of infringement but of ownership" but predicated this holding on the fact that a registration of copyright had been filed that would put the plaintiff on constructive notice of the ownership dispute. *See* 34 F. Supp. 3d at 923 (quoting the 17 U.S.C. § 205(c) of the Copyright Act). Here, there are no allegations (or other indication) that Defendants held a copyright registration in the logo design that would be sufficient to put Porter on constructive notice. Even if there were, relying on Section 205(c) in this manner has been called into question by the Seventh Circuit. *See Gaiman*, 360 F.3d at 655 (noting that it is "wrong to say that registration gives constructive notice . . . . What the Act actually says is that recording a document in the Copyright Office gives constructive notice of the facts in the document if the document identifies a registered work." (citing 17 U.S.C. § 205(c)).

46. Defendants apparently did not respond, and instead continued to use the logo design. *See* Am. Compl. ¶ 50. These statements, when taken as true and construed in Porter's favor, foreclose dismissal of Porter's claims at this preliminary stage. *See Jovic v. L-3 Servs., Inc.*, --- F. Supp. 3d. ----, No. 10 C 5197, 2014 WL 4748614, at *11 (N.D. Ill. Sept. 24, 2014) (where a plaintiff's allegations did not "conclusively demonstrate that the doctrines of equitable tolling or equitable estoppel would not apply" dismissal of plaintiff's claims at the pleadings stage is not appropriate).

In sum, "a motion to dismiss based on failure to comply with the statute of limitations should be granted only where 'the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense.'" *Chic. Bldg. Design, P.C.*, 770 F.3d at 613–14 (quoting *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005)). Porter's allegations do not do so; in particular, they do not set forth unequivocally that this case rests on an ownership dispute nor do they foreclose (and, indeed, they suggest) the applicability of the doctrine of equitable estoppel. Defendants' motion to dismiss based on the Copyright Act's three-year statute of limitations is therefore denied.

**B. Rule 12(b)(6)**

Defendants also briefly argue that Porter has failed to state a claim in Count V for vicarious infringement because he has failed to allege sufficient facts regarding: (1) the means by which Defendants Combs and Team One supervised SMP's infringing activities and (2) the specific financial gains Defendant Combs and Team One allegedly earned. *See* Defs.' Mot. Dismiss 8. But Porter is not required to plead specific facts, only to plead enough to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.

Here Porter's allegations are more than unadorned. He alleges that Combs and Team One had supervisory authority over the infringing activities. *See* Am. Compl. ¶ 71. Incorporating by reference the remainder of the allegations, Porter has identified these specific infringing activities: the reproduction of the logo in purple for use on feminine apparel, and the reproduction of the logo on merchandise and team equipment. *See* Am. Compl. ¶¶ 49–50. The extent and nature of Combs and Team One's supervisory authority over these allegedly infringing activities is a question for discovery. But Defendants have notice sufficient to seek that discovery.

As to the financial gains obtained by Defendants, Porter does not need to allege the specific amount of damages at this stage. Moreover, as Combs worked for SMP after the merger, his financial interests in the infringing activities is clear enough for purposes of overcoming a motion to dismiss under Rule 12(b)(6). Defendants' motions to dismiss for failure to state a claim are denied.

**IV. Conclusion**

Based upon the foregoing reasons, Defendants' motions to dismiss and request for attorney's fees [10], [16] are denied.

**SO ORDERED** **ENTERED 5/15/15**

**John Z. Lee**
**United States District Judge**